EDWARD FRANCIS GOODWIN *vs.* LOUIS GIOVENELLI.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 4th—decided June 20th, 1933.

*Arthur E. Howard, Jr.,* with whom, on the brief, were *Robert P. Butler* and *Paul Volpe,* for the appellant (defendant).

*James F. Kennedy,* for the appellee (plaintiff).

HAINES, J. The plaintiff brought this action to recover damages for injuries caused by being attacked and bitten by the defendant's dog. The circumstances of the injury and the results thereof were alleged in the complaint, the final paragraph of which reads: "9. No act on the part of the plaintiff in any way contributed to said injury." The defendant entered a general denial and the case was heard by *Judge Ells* April 20th, 1932, upon the issues thus joined. Over the objection of the plaintiff that it was inadmissible under a general denial, the court allowed the defendant to offer evidence that the conduct of the plaintiff was such as to incite the dog to attack him. Feeling that the plaintiff's conduct toward the dog was the controlling issue of the case, and being in doubt whether that issue could be fairly determined upon the pleadings as they stood, the court so stated to counsel on both sides, and thereupon the defendant's counsel asked permission to file an amendment to the answer, which the court allowed over the plaintiff's objection, and it was then ruled that a new trial should be had before another judge, and that no decision should be rendered upon the evidence which had been given. This amendment to the answer read as follows: "Further defense: The plaintiff, at the time when he was bitten, knowing the dog to be vicious, acted in such manner as the ordinary, rational person would have presumed was calculated to incite or provoke the dog to acts of damage, naturally resulting from such actions, by the use of the dog's natural weapons of defense, and, with such

knowledge, wantonly excited the dog and voluntarily and unnecessarily put himself in the dog's way." We accept the special finding made by *Judge Ells* and incorporated in the record by *Judge Cornell* as the basis for these facts.

The case was tried *de novo* before *Judge Cornell* on June 22d, 1932. Before the beginning of the trial plaintiff's counsel moved to amend the complaint by striking out paragraph nine above recited and substituting the following: "9. This action is brought under Section 3357 of General Statutes of the State of Connecticut, Rev. 1930." Upon objection by counsel for the defendant, the court ruled that a continuance would be granted if the amendment offered any surprise to the defendant or left him unprepared to proceed, and the statement being made that no surprise was involved, the amendment was allowed, counsel for the defendant assenting by saying "That is all right." No further objection or exception was taken to this ruling. Under the circumstances the amendment was properly allowed.

Thus, as the pleadings stood when the trial began, the action was based squarely upon the provisions of General Statutes, § 3357, which appears in a footnote, and the general denial would have put the burden upon the plaintiff of establishing a prima facie case within the provisions of that statute. The trial court ruled, however, that the burden was upon the defendant to establish the affirmative allegations of the "further

Sec. 3357. DAMAGE TO PERSON OR PROPERTY. If any dog shall do any damage to either the body or property of any person, the owner or keeper, or, if the owner or keeper be a minor, the parent or guardian of such minor, shall be liable for such damage, except where such damage shall have been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort.

defense." The court reached the conclusion that the defendant had not met that burden.

The controlling issues upon this appeal are but two: (1) whether the burden of proving the wrongful conduct of the plaintiff was upon the defendant, and (2) whether the damages were properly assessed.

Whatever may be said of the present complaint as originally framed, it is clear that when the case went to trial June 22d, 1932, it was in form and purpose an action upon the statute, in the enacting clause of which it is provided that a plaintiff who was at the time of the injury committing a trespass or other tort is excepted from its benefits and denied a recovery.

In 1908, when the decision in *Kelley* v. *Killourey*, 81 Conn. 320, 70 Atl. 1031, was rendered, the statute did not contain the exception now appearing therein, but it was otherwise substantially in its present form. General Statutes, Rev. 1902, § 4478. Interpreted literally, it made the owner or keeper liable for all damage done by the dog under any circumstances, to the body or property of any person. We held, however, in that case, that the true intent of the statute could only be effected by reading into it certain implied exceptions: (1) when the dog was protecting the master's premises against perpetration of a felony, and (2) when the injured party had provoked the dog by conduct which he knew or should have known was calculated to arouse it to attack. In 1911, the exception in the form now appearing in the statute was incorporated, and we thereafter held the legislative intent required that the terms trespass and tort referred to be interpreted to mean those which were committed upon the person or property of the owner or keeper or of his family, and other torts of a like character which the dog would instinctively defend and protect, including those committed upon the dog itself, which were likely to

incite it to attack. *Dorman* v. *Carlson,* 106 Conn. 200, 204, 137 Atl. 749.

It is apparent that the present plaintiff could not recover if at the time he was bitten he was within the exception of the statute as thus interpreted. The vital question raised by the appeal is whether it was incumbent upon the plaintiff to negative these exceptions in his pleading and proof, or upon the defendant to plead and prove the claimed exception as an affirmative defense.

Where an exception forms an integral part of that portion of a statute which creates a right, it becomes a limitation upon that right, and a plaintiff, to avail himself of the benefit of the statute, must show that he comes within the limited class for whose benefit the right was established, the burden of proof in this respect being upon him. *Ansell* v. *Boston,* 254 Mass. 208, 105 N. E. 167; *First Baptist Church* v. *Utica & S. R. Co.,* 6 Barb. (N. Y.) 313, 317; *Toledo, P. & W. Ry. Co.* v. *Lavery,* 71 Ill. 522; *Clough* v. *Sheperd,* 31 N. H. 490, 493; *Harris* v. *White,* 81 N. Y. 532, 546; *McGlone* v. *Prosser,* 21 Wis. 273; 1 Bates, Pleading (Ed. 1908) p. 225.

As the statute now reads, we hold that a complaint thereunder should, by proper allegations, negative the existence of circumstances which would bring the plaintiff within the exception, and all the provisions of the statute are put in issue by a general denial. No objection was made to the complaint as originally drawn stating that no act of the plaintiff in any way contributed to the injury, and the plaintiff could have been held to the burden of negativing the exception in the statute. The defendant did not do this, but voluntarily added to his general denial an affirmation of the exception, and thereby took upon himself the burden of proof thereof. He cannot now complain that the

court required him to meet that burden. *Coogan* v. *Lynch,* 88 Conn. 114, 116, 89 Atl. 906; *Krawitz* v. *Ganzke,* 114 Conn. 662, 664, 159 Atl. 897.

As to the second question, the assessment of damages: The court allowed, for loss of wages, $8, medical attention, $55, pain and suffering, $750, permanent injury including scar, $1800, and these sums amounted to $2613, but by an error in computation, it was put at $2529 in the judgment, which was allowed to stand. The plaintiff was bitten severely in the face, neck and arm, exposing the flesh, and he bled so profusely that the wife of the defendant called up a local physician by telephone, and the plaintiff and his companion drove to the doctor's office where he remained on the operating table for fifteen or twenty minutes while the wounds were sewed up. He was very weak and nervous and remained under the care of the doctor for three or four weeks thereafter, during which time he was given twelve injections in the administration of the Pasteur treatment, each of which was very painful, caused some swelling at the point of the injections and slight fever, and the plaintiff further suffered from shock and insomnia and was in a very weak and nervous condition. His injuries resulted in a scar two and one half inches long on the right side of his face, extending downward into the anterior triangle of the neck, being especially noticeable at the jaw. The plaintiff was twenty-nine years of age at the time and was of good appearance. His trade was that of a printer, but he had also engaged in theatrical performances earning about $150 a year by that means. The scar would be visible to persons in an audience in the front part of a theater, but could be concealed by make-up.

"We cannot set aside a judgment upon the ground that the damages are excessive, unless it clearly ap-

pears that the trial court unreasonably exercised the large discretion necessarily vested in it in the assessment of damages for personal injuries, and awarded damages which were so excessive as to be unreasonable and to amount to an injustice." *Belsky* v. *Sheronas,* 95 Conn. 693, 694, 112 Atl. 268; *Gray* v. *Fanning,* 73 Conn. 115, 117, 46 Atl. 83; *Horsfall* v. *Foley,* 111 Conn. 722, 723, 150 Atl. 64.

In computing the damages, the trial court included the bill for medical attention, of $55, but it is found that this bill was paid by the defendant though without the knowledge, consent or approval of the plaintiff. The established facts make it doubtful whether the plaintiff was ever obligated for the doctor's bill, since the services were apparently obtained by the defendant by telephone, but if the plaintiff was obligated, that obligation was fully discharged by the payment made by the defendant himself. It is not the case of payment by a third party but by the very party against whom the damages are now assessed, and they should not now be assessed against him.

The defendant complains that the judgment is unreasonably large and not justified by the evidence. We cannot hold that criticism valid as to the plaintiff's pain and suffering, but we are unable to sustain the award of $1800 for the scar. The finding is that an operation of plastic surgery at a cost of less than $200 and two weeks of time, might "relieve the appearance of the scar with reasonable hope of success that it be thus reduced to a very fine linear scar." Under these circumstances, an award of more than $800 for this injury, would, in our view, be unreasonable.

There is error in the amount of damages awarded, and the judgment is set aside and a new trial ordered unless the plaintiff within one month enter a remittitur for $1055; but if such remittitur be entered, the trial

court is directed to enter judgment for the plaintiff to recover $1474, the costs of this court in either event, to be taxed in favor of the appellant.

In this opinion the other judges concurred.