The minor plaintiff in this action is seeking to recover damages for personal injuries sustained by *Page 361 
her on August 24, 1940, when a Ford car owned by the defendant Josephine D. Johnston and operated by her husband, the defendant Graham T. Johnston, came in collision with another Ford car in which the plaintiff was a passenger, the latter car being owned by the defendant Robert H. Gerrish and operated by his wife, the defendant Wilhelmenia Gerrish. The accident in question occurred on the Foxon Road in East Haven, Connecticut, at about 4:50 p.m. on said August 24, 1940.
The above case was one of three companion cases tried to the court on January 13 and 14, 1942. The other two cases are "Robert H. Gerrish vs. Graham T. Johnston" (File No. 32048) and "Wilhelmenia Gerrish vs. Graham T. Johnston" (File No. 32049). It is sufficient to say that Mr. Gerrish in his action is seeking to recover property damages of the Johnstons and Mrs. Gerrish is seeking to recover damages for personal injuries she herself sustained. This memorandum, therefore, is to be regarded also as the basic memoranda of decision in the latter cases de liability aspect.
Said Foxon Road, also known as Route 80, is a public highway in East Haven running substantially in an easterly and westerly direction in the general vicinity of Bassett's fruit stand which was located on the northerly side of said highway on August 24, 1940. Said highway on said date was composed of two concrete panels, each 10 feet wide, with a tar shoulder on the northerly and southerly side thereof, each 3 feet in width. Said highway for several hundred feet to the east and west of said Bassett's fruit stand was substantially level and straight.
At about 4:50 p.m. on said August 24, 1940, the defendant Wilhelmenia Gerrish was operating her husband's (defendant Robert H. Gerrish) Ford sedan in an easterly direction on said highway towards Branford. It was her purpose and intention to stop at the Bassett stand to make a purchase. When Mrs. Gerrish arrived approximately opposite said stand (located on the northerly side of said highway), she commenced to make what might be described a "U Turn" on said highway which, in the ordinary course of events, would have brought her car on the northerly side of said highway, in front of said stand, but some few feet off of said highway, facing west, the direction from which she had come.
At said time the Johnston car was proceeding in a westerly *Page 362 
direction on said highway, operated by the defendant Graham T. Johnston. The speed of the Johnston car was about 40 m.p.h.
With Mrs. Gerrish at the time was the minor plaintiff, Elaine Pendleton, her then two and one-half-year-old granddaughter. Elaine was standing up on the front seat.
With Mr. Johnston at the time was his wife (the defendant Josephine D. Johnston, owner of the car), and his young daughter. Mrs. Johnston was seated on the right hand side of the rear seat and the daughter on the front right seat next to her father.
Mrs. Gerrish's version of the accident was that when she reached a point on said highway approximately opposite Bassett's fruit stand, or perhaps opposite the easterly end thereof, she drove over on the southerly tar shoulder, looked to her rear, perhaps one car to her rear passed, looked in front of her, observed no moving traffic in her direction, either to her rear or in front, and then commenced the fatal "U Turn"; that when she had almost completely crossed the northerly panel of said highway she observed the Johnston car for the first time virtually heading from the east towards the right side of her highway crossing car, and that her only thought at that moment became concentrated upon her granddaughter Elaine, who was standing up on the right side of the front seat, as aforesaid.
Mr. Johnston's version of the accident was that he was proceeding in a westerly direction on said highway at about 40 m.p.h.; that there had been some eastbound traffic; that suddenly and without any warning whatsoever a car which he later learned to be that operated by Mrs. Gerrish commenced a "U Turn" on the highway, directly in his path; that he immediately applied his brakes with full force; that he had no opportunity to avoid striking the Gerrish car on the right middle side thereof; that although he had operated on said highway before, he did not recall the presence of Bassett's fruit stand on the northerly side thereof.
It appears from the evidence that the Johnston car (having four-wheel brakes) laid down skid marks for a distance of about 39 feet. These marks ran substantially in a straight direction and the most northerly line was approximately one foot south of the northerly edge of the concrete highway. The *Page 363 
fact that the cars at the time of the collision were in what may be described as a "T Formation" doubtlessly resulted in the Johnston car not laying down longer skid marks. It is also to be noted that the westerly end of said skid marks were approximately 48 feet from the easterly edge of said fruit stand. The exact length of said stand did not appear in the evidence; there was testimony, however, that said stand set back several feet from the highway and that a driveway was on both the easterly and westerly margins for the apparent purpose of permitting ingress and egress for motorists.
After a careful study of all the evidence and the respective claims of counsel, the court concludes:
1. That the defendant Graham T. Johnston did not operate his wife's Ford car in a negligent manner in any material respect on the late afternoon of August 24, 1940, in the vicinity of Bassett's fruit stand on Foxon Road, East Haven.
2. That the proximate cause of the collision between the Johnston and Gerrish cars was the "U Turn" on said highway made by the defendant Wilhelmenia Gerrish directly in the path of the Johnston car and without any proper warning of such turn as to give Mr. Johnston a reasonable opportunity to operate commensurate with the emergency and dilemma thereby created by Mrs. Gerrish's conduct which in degree exceeded the limits of "ordinary negligence" and could well be described as "gross negligence."
In passing, three other factors are expressly noted: (a) the weather was clear and the highway dry; (b) Mrs. Gerrish had an unobstructed view of several hundred feet in front of her before commencing the "U Turn"; (c) the agency of the operators is not in dispute.
General reference is made to 5 Am. Jur. Automobiles § 323; 42 C.J. Motor Vehicles § 650; Anno. 57 A.L.R. 1106.
The court now comes to the question of damages.
It has been noted that as Mrs. Gerrish was effecting a turn on the highway the two and one-half year old plaintiff was standing on the front right seat. The Johnston car struck the Gerrish car on the right middle side. The child was thrown forward and struck her head on the panel of the dashboard, receiving a cut across the right eyebrow which penetrated three layers of skin. Today, one year and five months after the *Page 364 
accident, there is clearly visible a scar of approximately one inch in length and between one-eighth and one-quarter of an inch in width. With the assistance of a flashlight the presence of a now growing light hair in the general eyebrow region is discernible; this hair may continue to grow and become darker in hue with the passing of years and match substantially the color of the left eyebrow.
The child, however, will always carry the scar and hair will not grow in the scar line. Dr. Gettings, called by the defendants Gerrish, testified that the scar itself will always be present, but that with the expected growth of hair on the eyebrow above and below the scar, the scar itself will be covered in later years. Cross-examination of this witness satisfied the court that whether or not the scar will be observable depends largely upon the growth of a considerably heavy eyebrow above and below the scar line. So also, the plaintiff in later years will have to take special pains to avoid a narrow eyebrow line or such other similar styles frequently popular with young ladies. Dr. Gettings' testimony, at best, involved much speculation.
The plaintiff is an exceedingly attractive little girl now four years of age. The medical testimony has satisfied the court that the aforesaid scar is, and will continue to be, both permanent and disfiguring. The fact that the plaintiff is a girl necessarily weighs heavy on this aspect of the case.
The bill of Dr. Taylor, plaintiff's attending physician, is only $5. This case is one in which "special" damages can play no standard in the awarding of general damages. The doctor's bill manifestly could have been run higher, but such was not done. "Nor can much help be had from decisions in other cases involving the amount of damages awarded, because the circumstances of these vary so largely." Goldberg vs. Mertz,123 Conn. 308, 310.
The plaintiff was indisposed for some days after the accident, nervous for some months thereafter, and up to this time has remained "auto-shy." She is clearly entitled to ample damages.
There is of course no question involved of plaintiff being guilty of contributory negligence.
 In view of all the foregoing, therefore, judgment will enter